Wiley Hill v. The State.

No. 4434.　Decided March 3, 1909.

Rehearing Denied March 20, 1909.

**1.—Theft of Mule—Continuance—Testimony not Probably True.**

Where upon trial for theft of a mule the testimony of the absent witness set out in defendant's second application for continuance was not probably true in the light of the record, there was no error in overruling the motion.

**2.—Same—Evidence—Ownership—Possession.**

Where upon trial for theft of a mule the indictment alleged possession in one who had care and control of the animal at the time of its taking, there was no error in admitting testimony that the ownership of the animal was in one person and the possession in another as special owner.

**3.—Same—Charge of Court—Preliminary Statement of Court.**

Where upon trial for theft of a mule it appeared that before the trial of the case the court, in empaneling the jury for the week, orally advised them

of their duties as jurors in the trial of civil and criminal cases, and that none of the language used by the court was improper, there was no reversible error.

**4.—Same—Sufficiency of the Evidence.**

Where upon trial of theft of a mule the evidence showed overwhelmingly and conclusively the defendant's guilt to a moral certainty, the conviction will not be disturbed.

Appeal from the District Court of Scurry. Tried below before the Hon. Cullen C. Higgins.

Appeal from a conviction of theft of a mule; penalty, three years confinement in the penitentiary.

The opinion states the case.

*Smith, Hutcheson & Taylor,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant appeals from a conviction had in the District Court of Scurry County on the 26th day of September last year on a charge of the theft of a certain mule, and for which his punishment was assessed at confinement in the penitentiary for a term of three years.

1. The evidence shows that one S. W. Grimes who resided at Snyder, owned, among other things, a sorrel mare mule about fifteen hands high, with a white spot on her left side about the size of the bottom of a teacup. This animal was taken from his pasture a few miles from Snyder on the evening, or night of Tuesday, March 3, 1908. Appellant was at or near Snyder on this day. A day or two before this, he was shown to have been at or near Grimes' pasture and is shown to have had some knowledge or familiarity with Grimes' stock. A few days after this, and as the witnesses claim on March 5, he sold this mule to W. R. Hilton at Stamford, Texas, to whom he stated his name was Jack Willis. The identification by Hilton and others of appellant was clear, positive and unequivocal. Appellant undertook to show that he was not in or near Stamford on March 5. He so testified in person on the witness stand and produced other witnesses, who, in a general way, accounted for his being at other and different places than Stamford on the date mentioned, but much of the testimony on this question is uncertain and to some extent contradictory. When his case was called for trial he made application for a continuance on account of the absence of Sullie Vaughn and J. W. Thompson. Vaughn was alleged to reside in Pecos City and Thompson in Ft. Worth. He avers in substance, that he expected to prove by the witness Vaughn that he ate dinner at Vaughn's restaurant in Pecos City on the 6th of March, 1908, and that he met Thompson on the train on the evening of the 5th of March, 1908, at Loraine, Texas, and went with him to Pecos City. He does not aver any former or

prior acquaintance with either of these witnesses, or any facts showing their acquaintance with him, or to what extent, or in what manner they would identify him as the person present at the places above named and at the times above stated. The testimony is, as stated, of the other witnesses, somewhat contradictory and certainly very uncertain. The court in approving the bill in reference to this matter says, in substance, that this testimony, as shown on the trial, is not probably true and that the court believes that the application for continuance was made especially for delay, and that only. The court further states that this was in substance, a second application for a continuance; that on an earlier day of the same term appellant filed his first application for a continuance for a number of witnesses including those named above, and the court had process duly issued and all the witnesses appeared except Thomson and Vaughn. There was also some question raised as to the subpoena for Vaughn being for "Sallie" Vaughn, instead of "Sullie" Vaughn as originally issued; and the court states that this was due to the carelessness and neglect of appellant and his counsel. From a careful inspection of the statement of facts, we believe it is manifest that this testimony is not true; that is, in the sense that appellant was not at Stamford at the time testified to by Hilton and other witnesses, and was not the person who sold Hilton the mule in question. It should be stated that Grimes subsequently identified and recovered the mule. Its mark was of such a character, so unusual, as to make its identification easy and certain. If testimony of witnesses can be believed appellant sold this mule to Hilton; and, we think, in view of the entire record the court below was correct in holding that the testimony sought was not probably true.

2. Again, exception was urged on the trial to the admission of the testimony of the witness Grimes to the following effect: "That the mule alleged in the indictment to have been stolen by this defendant was owned by said Grimes; that it was in the possession of one N. G. Henderson who was hired by the said Grimes by the month and who was living on said Grimes' farm on which said Grimes did not live; that said Henderson had the care, management and control of said mule, and was working and feeding the same, but that the said mule was at all times subject to the orders of said Grimes." This testimony was objected to for the reason that the indictment did not contain any allegation that the mule was owned by said Grimes and kept, managed and controlled for him by said Henderson. In admitting this testimony the court explains that the indictment in the case in one count charged the ownership and possession in S. W. Grimes, who was real owner, and in the other count the ownership and possession was laid in N. G. Henderson, who was the special owner. An inspection of the indictment verifies the truth of this explanation. In submitting the matter

to the jury, the first count alleging ownership and possession in Grimes was withdrawn, and the case went to them on the count charging the theft from Henderson. Under the statute and decisions it .was essential to prove the relation and possession of Henderson with reference to this property and it was competent for the court to hear any and all testimony touching this matter. The facts undoubtedly show such possession of the mule in question in Henderson as to make it proper, if not indeed, indispensable to prove possession in Henderson.

3. Another matter raised on the appeal is the objection of counsel to an oral charge to the jury summoned for the week during which appellant was tried. We deem it unnecessary to set out the language attributed to the court in the bill of exceptions, since the court, in approving the bill, undertakes to state and does state clearly just what he did say to the jury. It seems that in empaneling the jury the court, in substance, made the following statements: "The jury were told that in the trial of civil cases they would be permitted to separate until the charge of the court was given to them, but in the trial of criminal cases they would be kept together and free from the intrusion of any and all parties at all times until a verdict was rendered; that they were not authorized to arrive at a verdict by lot in criminal cases nor to discuss the fact, if such be the fact, that a defendant failed to testify in any case; that it was not a subject of discussion nor a presumption of guilt, and that jurors could take no testimony on the outside of the testimony offered on the witness stand in any case, either civil or criminal, but would be required to try the case upon the sworn testimony of witnesses from the witness stand, and would be bound by the law given them in charge by the court, and the special charges given by the court were as much a part of the law as the general charge of the court, and were directly applicable to some feature of the testimony not clearly presented by the court's general charge, and that either party had the right to prepare special charges in both civil and criminal cases, and that it was the duty of the trial court to submit all controverted issues in charge to the jury, however slight or flimsy the testimony that was offered upon the issue might be, that it was the duty of the jury, who were the exclusive judges of the credibility of the witnesses and of the weight to be given to the testimony, to pass upon such testimony under the instructions given by the court, and that if the court failed or refused to give a charge upon any issue raised by the evidence the higher court was bound to reverse him" There was no objection made at the time to the language used by the court, but after the court had used the language above quoted and long prior to the time appellant's case was tried, counsel representing him did object for the following reasons: "That it would not be proper to give to the jury after the evidence and argument of counsel had

been heard. Second, because it might tend to minimize any issues that the defendant might raise in his favor. Third, because it would tend to prejudice a jury against a defense of the defendant before the testimony in the case had been heard by them. Fourth, because the law directs as to the manner and time that the charge in criminal cases be given to the jury, and does not direct that it be given in the manner herein set out." We think it is obvious that most of the language addressed by the court to the jury was not only proper but timely, and that none of it was of such a character as to justify us in reversing the judgment of conviction thereafter had.

4. The only other ground of the motion, which, in the light of the record, can be considered by us, is the assignment that the verdict of the jury is not supported by the evidence. To this we can not agree. It seems to us that the evidence is so overwhelming and conclusive as to establish the guilt of appellant to a moral certainty.

5. Finding no error in the proceedings, the judgment is in all things affirmed.

*Affirmed.*

[Rehearing denied, March 20, 1909. Reporter.]